Filed 12/4/25  In re S.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085657 |
| Plaintiff and Respondent, | (Super. Ct. No. DPRI2400311) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| M.M. et al., | **[NO CHANGE IN JUDGMENT]** |
| Defendants and Appellants. | |

The petition for rehearing is denied.  The opinion filed in this matter on November 7, 2025, is modified as follows:

On page 2, section II first full paragraph the second sentence should read as follows:

S.M. had a skull fracture and apparent fractures on both wrists, but the parents claimed they did not know what happened.

1

On page 5, the following sentence and paragraph should be added to the end of the first full paragraph.

Dr. Dantuma acknowledged, however, that S.M.'s skull fracture could have been accidental.

The parents' physician, Dr. Hyman, testified that S.M.'s skull fracture was fully consistent with an accidental injury. In particular, he found that S.M.'s head injury was consistent with a fall from the parents' bed, as Father claimed had happened. He also opined that S.M. had not even suffered wrist fractures.

On page 6, the following should be added to the end of the second paragraph:

The court also found DPSS failed to satisfy its burden on two other allegations (b-1 and e-1) that asserted S.M.'s head injuries were nonaccidental (i.e., intentionally caused by Mother and/or Father's abuse). The court therefore did not sustain those allegations.

On page 8, last paragraph should read as follows:

Substantial evidence supports both allegations the juvenile court found true here.

As to the b-1 allegation, there was sufficient evidence for the juvenile to find that S.M. suffered a fractured skull because of the parents' negligent behavior. S.M., an infant, presented with a fractured skull for which the parents initially had no explanation. They consistently denied that S.M. had fallen until after the jurisdiction hearing, when Father told the social worker—for the first time—that

Mother told him that S.M. had fallen out of the parents' bed about a week before they took him to the emergency room. The parents' shifting explanation (or lack of any explanation) for S.M.'s serious head injury reasonably led the juvenile court to find that, at a minimum, the parents' "unreasonable or neglectful acts" caused the injury. From this, the court could have reasonably concluded that S.M. was at substantial risk of suffering similar physical harm in the future due to the parents' failure or inability to adequately supervise or protect him. The juvenile court's finding the b-1 allegation true was therefore appropriate. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [collecting cases upholding jurisdiction that "involve[d] children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety"].)

On page 12, first full paragraph should read as follows:

The juvenile court's removal order was proper. S.M. suffered a skull fracture while in the parents' care, yet both parents denied S.M. had an accident, even though they initially had no explanation for his injuries. Mother never gave an explanation for S.M.'s injury, and Father only offered one after S.M. was detained. The severity of S.M.'s injury and the parents' inconsistent statements about its cause was enough for the juvenile court to find that it was highly probable that S.M. would remain at a substantial risk of serious harm if he were not removed from the parents' care and that there were no reasonable means to protect him without removal. Coupled with the parents' later incident of domestic

3

violence, the juvenile court permissibly found that removing S.M. from the parents' care was appropriate.

Except for this modification, the opinion remains unchanged.  These modifications do not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.

Filed 11/7/25  In re S.M. CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085657 |
| Plaintiff and Respondent, | (Super. Ct. No. DPRI2400311) |
| v. | OPINION |
| M.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant, Y.R.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant, M.M.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Julie Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendants and appellants, M.M. (Father) and Y.R. (Mother) appeal the juvenile court's orders asserting jurisdiction over their minor son, S.M., and removing him from their care. We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The parents took S.M. to the emergency room in July 2024, when S.M. was about eight months old. S.M. had a skull fracture and fractures on both wrists, but the parents claimed they did not know what happened. Law enforcement and a Riverside County Department of Public Social Services (DPSS) social worker spoke with the parents at the hospital, and they maintained that they did not know what caused S.M.'s injuries.

Father and Mother told the social worker what led to bringing S.M. to the emergency room, and their stories were largely consistent. Father explained that he left for work before S.M. and Mother woke up. Before leaving, he checked on S.M. in his crib and he seemed fine. About 10 minutes after he left, however, Mother called him and told him to come back because she saw a bump on S.M.'s head. When he came back, he observed a bump on S.M.'s head, so they took S.M. to the hospital. Hospital staff examined S.M. and he appeared normal, so they sent him home with orders to follow up

2

with his pediatrician.  The parents later took S.M. to his pediatrician, who took x-rays.

Later that day, the pediatrician called Father and told him to take S.M. to the emergency

room because the x-rays revealed that he had a skull fracture.

The social worker spoke with two forensic physicians at the hospital, Dr. Siccama

and Dr. Dantuma.  Dr. Siccama found S.M.'s injuries to be suspicious for abuse,

particularly because the parents had no explanation for what happened.  S.M.'s skull

fracture was consistent with blunt force trauma from a fall or being hit, and his left wrist

injury was likely caused by trauma, but it needed more imaging.  Dr. Dantuma explained

that hospital staff had scheduled an MRI for S.M., but the parents did not want to wait for

it and planned to leave, which was against S.M.'s physicians' advice.

Because of these concerns, the social worker placed S.M. in protective custody

and filed a petition on his behalf under Welfare and Institutions Code section 300,

subdivisions (a), (b), and (e).  About a week later, the juvenile court found that DPSS

made a prima facie showing that S.M. came within the court's jurisdiction and detained

S.M., who remained at the hospital.

In the following days, the social worker spoke with Dr. Dantuma again.  Dr.

Dantuma explained that MRI results of S.M.'s head and wrists were suspicious for abuse.

In Dr. Dantuma's opinion, S.M.'s wrist fractures could only have been the result of

shaking or pulling.  Thus, in her view, the left wrist fracture was "without a doubt"

caused by intentional force, while the right fracture was "'very likely'" caused by

intentional force, but further testing was needed.  Dr. Dantuma further opined that S.M.'s

skull fracture could not have been caused by a fall on a carpeted floor, such as the floor in the parents' bedroom. Nor could S.M.'s wrist fractures have been caused by a fall.

At a detention hearing in August 2024, the juvenile court ordered S.M. detained from Mother, but not Father. The court ordered a safety plan put into place, which directed the paternal grandmother to be in the home and that S.M. could not be left alone with Father.

A few weeks later, the social worker interviewed the Father again. For the first time, Father reported that S.M. fell off the bed about a week before they took him to the emergency room because of the skull fracture. Father explained that Mother told him that she woke up in the middle of the night, took S.M. out of the crib and put him in her bed, fell asleep, and woke up to S.M. crying on the floor next to the bed. She picked him up and he seemed fine after crying for a short time.

The social worker never had a chance to talk to Mother about this because her attorney precluded her from talking with the social worker due to a pending criminal investigation into S.M.'s injuries. Mother thus never explained to DPSS how S.M.'s injuries could have occurred.

In September 2024, Dr. Dantuma told the social worker that further testing on S.M.'s right wrist confirmed that the injury could have been caused by shaking, traction, or twisting of the wrist—in other words, by intentional force. Dr. Dantuma also opined that the bump on S.M.'s head would not have taken a week to develop, so it was not plausible that S.M. fell off the bed a week before the parents took him to the emergency

4

room. Dr. Dantuma thus maintained her opinion that S.M.'s injuries were the result of abuse, not an accident.

At a contested jurisdictional/dispositional hearing in December 2024 (which concluded after another hearing date in January 2025), the social worker testified that the parents had yet to provide a plausible explanation for S.M.'s injuries. In the social worker's view, the parents refused to take any accountability and failed to understand DPSS's concerns. Dr. Dantuma also testified at the hearing and explained in detail why she concluded that S.M.'s wrist injuries were "highly suspicious for abuse" and his skull fracture was suspicious for abuse because the parents had no explanation other than Father's claim that S.M. fell off the bed, which Dr. Dantuma found implausible.

In mid-January 2025, DPSS received a referral concerning the parents and S.M. As part of the investigation into the referral, the social worker interviewed the paternal grandmother. She claimed that in late December 2024, Mother "barged into the home" and began arguing with Father. During that argument, the paternal grandmother saw Mother slap Father in the face three times. The paternal grandmother called the police and Mother was arrested. Father confirmed that this happened when the social worker interviewed him.

In response, DPSS filed an amended petition on S.M.'s behalf. The amended petition added an allegation concerning this recent domestic violence incident.

After concluding the contested jurisdiction/disposition hearing, the juvenile court found true two allegations. As modified, the first (b-1) allegation reads in full: "While in

5

the care and custody of the parents, the child was found to have a fractured skull. A CAN exam was completed on July 31, 2024, wherein the child's injuries were found to be suspicious for abuse. Further, the parents are unable to provide an explanation for the injuries and the injuries sustained by the child are of a nature as would ordinarily not be sustained except as a result of the unreasonable or neglectful acts or omissions, of either parent as set forth under Welfare and Institutions Code Section 355.1."[1] The second (b-2) allegation reads in full: "The mother neglects the health, safety, and well-being of the child in that she engages in acts of domestic violence against the father with the most recent incident occurring on or about January 9, 2025, where the mother slapped the father in the face multiple times, while the child . . . was present in the home, after the father had invited her to spend the night at the home. Additionally, the mother was arrested for charges of Battery on Spouse/Person Whom Defendant is Cohabitating with."

The juvenile court then ordered S.M. removed from the parents' care and ordered reunification services for them. The parents timely appealed.

III.

DISCUSSION

A. *Jurisdictional Findings*

The parents first contend insufficient evidence supports the juvenile court's jurisdictional findings. We disagree.

Welfare and Institutions Code, section 300, subdivision (b) provides that a child is

---

[1] The juvenile court struck language in the allegation about S.M.'s wrist injuries.

6

within the juvenile court's jurisdiction if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." DPSS had the burden to show the following three elements by a preponderance of the evidence: "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) "[T]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citation.] The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, disapproved on another ground by *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18.)

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) If substantial evidence supports them, we must affirm. (*Ibid.*) "'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*Ibid.*) "To be sufficient to

7

sustain a juvenile dependency petition the evidence must be "'reasonable, credible, and of solid value'" such that the court reasonably could find the child to be a dependent of the court . . . . [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.) The parent challenging the jurisdictional finding bears "the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

Substantial evidence supports both allegations the juvenile court found true here.

As to the b-1 allegation, there was sufficient evidence for the juvenile to find that S.M. suffered a fractured skull as a result of the parents' negligent or intentional behavior. To begin with, S.M.'s skull fracture was consistent with blunt force trauma from being hit. At the same time, S.M. suffered two broken wrists, injuries that Dr. Dantuma believed could only have been caused by intentional force. The fact that the parents had no explanation for any of these injuries reasonably led Dr. Dantuma to find that S.M.'s skull fracture was non-accidental. That, in turn, provided substantial evidence for the juvenile court to find that the parents' negligent or intentional behavior caused S.M. to suffer a skull fracture, which necessarily placed S.M. at substantial risk of serious physical harm. (See *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness . . . may constitute substantial evidence"]; accord *In re Frederick G.* (1979) 96 Cal.App.3d 353, 366 ["The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent

8

or false as to other portions."].)  The juvenile court's finding the b-1 allegation true was therefore appropriate.

Substantial evidence likewise supports the juvenile court's finding the b-2 allegation true.  Domestic violence is harmful to children and places them at a substantial risk of serious harm when it occurs in their presence.  (See *In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)  Domestic violence between a child's parents thus may support a jurisdictional finding "'if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm.'"  (*In re L.O.* (2021) 67 Cal.App.5th 227, 239.)

The b-2 allegation here states Mother had engaged in domestic violence in S.M.'s presence, which led to charges being filed against her in the weeks between the first and second day of the jurisdiction/disposition hearing.  The fact that the domestic violence occurred during that time suggested that it was "ongoing or likely to continue" when the juvenile court found the b-2 allegation true.

The juvenile court received evidence about this incident, including a police report and statements from Father and the paternal grandmother, which revealed that Mother had slapped Father in the face several times during a heated argument, the paternal grandmother called the police, and Mother was arrested and charged.  This evidence was sufficient for the juvenile court to find that Mother engaged in domestic violence, which placed S.M. at a substantial risk of serious physical harm.  (See *In re T.V.* (2013) 217 Cal.App.4th 126, 134; *In re Heather A.*, *supra*, 52 Cal.App.4th at pp. 193-194, abrogated

9

on another ground in *In re R.T.*, *supra*, 3 Cal.5th at pp. 628-629.)  The juvenile court thus appropriately found the b-2 allegation true.

B.  *Removal*

The parents next argue that the juvenile court erred by removing S.M. from their care.  We disagree.

To order a child removed from a parent's physical custody, the juvenile court must find by clear and convincing evidence that (1) there "would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child in the parent's home, and (2) "there are no reasonable means by which the [child's] physical health can be protected without" removal.  (Welf. & Inst. Code, § 361, subd. (c)(1); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)  "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.' [Citation.]  The court may consider a parent's past conduct as well as present circumstances.  [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

We review the removal findings for substantial evidence, "taking into account the level of confidence that the 'clear and convincing evidence' standard demands." (*In re Zoe H.* (2024) 104 Cal.App.5th 58, 71; *Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 995-996.)  In doing so, we "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated

10

the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, at pp. 1011-1012.)

The juvenile court's removal order was proper. S.M. suffered a skull fracture while in the parents' care, and there is strong evidence that the injury was non-accidental, meaning that Mother or Father (or both) caused it by abusing S.M. Yet both parents denied S.M. had an accident, even though they initially had no explanation for his injuries. Mother never gave an explanation for S.M.'s injuries, and Father only offered one after S.M. was detained, which Dr. Dantuma found medically implausible. The severity of S.M.'s injuries and the parents' lack of an explanation for them (or an implausible explanation for them) was enough for the juvenile court to find that it was highly probable that the physical abuse would continue if S.M. were not removed from the parents' care and that there were no reasonable means to protect him without removal. Coupled with the parents' later incident of domestic violence, the juvenile court permissibly found that removing S.M. from the parents' care was appropriate.

The parents argue that S.M. could have safely stayed in the home in Father's care with the paternal grandmother, consistent with the safety plan put in place after S.M.'s detention. But the paternal grandmother's visa had expired and, by the time of the removal order, it was unclear whether her visa would be renewed. It was thus uncertain whether the paternal grandmother could have cared for S.M. Because the paternal grandmother would no longer be available to care for S.M.'s safety and ensure that he

was not left alone with Father, the juvenile court reasonably found that S.M.'s removal from the parents' care was the only available option to ensure his safety.

Father alternatively asserts for the first time on appeal that family friends could have cared for S.M.  Father forfeited the argument by failing to make it at the disposition hearing.  (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)

IV.

DISPOSITION

The juvenile court's jurisdictional and dispositional findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.